IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANTHONY G. PRESTON IV,           §
                                 §
              Plaintiff,          §
                                 §
v.                               §        CIVIL ACTION NO. H-07-3519
                                 §
R.S. HUGHES CO., INC.,           §
                                 §
              Defendant.          §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Anthony G. Preston IV, brought this action against his former employer, R.S. Hughes Co., Inc., for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.  Preston, an African American, was terminated by R.S. Hughes on August 14, 2006.  Pending before the court are Defendant's Motion for Summary Judgment (Docket Entry No. 23), and Defendant's Motion to Strike Summary Judgment Evidence (Docket Entry No. 27).  For the reasons explained below, Defendant's Motion for Summary Judgment will be granted, and Defendant's Motion to Strike Summary Judgment Evidence will be denied.

## I.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).  The
Supreme Court has interpreted the plain language of Rule 56(c) to
mandate the entry of summary judgment "after adequate time for
discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct.
2548, 2552 (1986).  A party moving for summary judgment "must
'demonstrate the absence of a genuine issue of material fact,' but
need not negate the elements of the nonmovant's case." Little v.
Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If
the moving party meets this burden, Rule 56(c) requires the
nonmovant to go beyond the pleadings and show by affidavits,
depositions, answers to interrogatories, admissions on file, or
other admissible evidence that specific facts exist over which
there is a genuine issue for trial.  Id.  Factual controversies are
to be resolved in favor of the nonmovant, "but only when . . . both
parties have submitted evidence of contradictory facts."  Id.

## II.  Undisputed Facts

Preston began work for R.S. Hughes as a receiving clerk in the
warehouse of the company's Houston division on or about May 20,
1998.[1]   R.S.  Hughes  is  a  national  industrial  distributor  of

---

[1]Plaintiff's Deposition, Exhibit A attached to Defendant's
Motion for Summary Judgment, Docket Entry No. 23, p. 37, lines
20-24.

products and supplies primarily used in factories.  Preston's duties as receiving clerk included receiving, shipping, and selecting products for orders that were called in by customers.[2] The R.S. Hughes Houston facility was staffed by approximately ten employees during Preston's time of employment, including three inside sales representatives, three outside sales representatives, an accounts receivable clerk, two receiving clerks (Preston's role), and an inside sales manager, who also supervised the warehouse personnel.[3]  The inside sales manager for the majority of Preston's employment, and at the time of his termination, was Kevin Alvarado.[4]

Preston was involved in a number of incidents with coworkers during his time at R.S. Hughes.  The parties dispute the specific facts of these incidents, but it is not disputed that Preston was involved in confrontations with multiple coworkers, in particular with his supervisor, Alvarado.

The first incident occurred in December of 2002.  Preston and a sales representative, Martin Rodriguez, engaged in an argument over a neglected rush order.[5]  During the course of the argument Preston scraped Rodriguez across the neck with a pen, after which

---

[2] Id., p. 39, lines 7-12.

[3] Id., p. 50, line 14 – p. 52, line 7.

[4] Id., p. 45, lines 20-23.

[5] Id., p. 61, line 2 – p. 66, line 7.

Rodriguez called the police.[6]  A police officer arrived at the scene but took no legal action.[7]

The second incident was a dispute in 2003 between Preston and Angelo Navarro, the other receiving clerk in the warehouse, over who was to complete certain warehouse duties.[8]  Alvarado notified Preston that Navarro had threatened to quit after the incident, after which Preston apologized to Navarro.[9]

In a third incident Preston spoke to another sales representative, Kirk Hein, in a loud voice after overhearing a comment by Hein that Preston later admitted he misinterpreted.[10] The altercation upset a coworker, Rebecca Hendrickson.[11]

Preston was involved in a series of disagreements with Alvarado.  On one occasion Preston left work after Alvarado refused to allow Preston to move a television set into the warehouse in order to watch "March Madness" basketball games.[12]  In December of 2004, after Preston's wife called Alvarado to notify him that Preston was extending a vacation, Preston and Alvarado had an

---

[6]Id., p. 63, line 18 – p. 65, line 20.

[7]Id.

[8]Id., p. 73, lines 2-22.

[9]Id., p. 73 line 23 – p. 74, line 19.

[10]Id., p. 77, line 21 – p. 81, line 1.

[11]Id., p. 126, line 2 – p. 127, line 8.

[12]Id., p. 122, line 16 – p. 125, line 4.

-4-

argument when Alvarado instructed Preston that he had to personally notify him if he wished to extend vacation days.[13]  On another occasion Preston and Alvarado had an argument after Alvarado authorized a sales representative to switch out a UPS monitor in the sales office with a UPS monitor that Preston had been using in the warehouse.[14]

**A.   Preston's Complaint to Human Resources**

On January 30, 2006, Preston e-mailed a complaint about Alvarado to Janet Sall, R.S. Hughes' Human Resource Manager.[15]  In the e-mail Preston stated that he had "been subject[ed] to remarks that have been racial" while employed at R.S. Hughes and complained specifically about an episode on January 27, 2006, in which Preston, Alvarado, and other R.S. Hughes employees gathered after work at a Houston bar and grill.[16]  Preston's e-mail stated:

> A remark was made about chocolate (in reference to Blacks).  It was innocent enough and was taken in the humor that it was intended.  Mr. Alvarado followed with a remark of how much he liked chocolate.  Then out of the clear blue, he remarks how attractive my wife was and how he would like to eat that chocolate.[17]

_____

[13]Id., p. 85, line 12 – p. 86, line 16.

[14]Id., p. 88, line 17 – p. 92, line 16.

[15]E-mail from Anthony Preston to Janet Sall, Monday, January 30, 2006, Exhibit 14 attached to Plaintiff's Deposition, Exhibit A attached to Defendant's Motion for Summary Judgment, Docket Entry No. 23.

[16]Id.

[17]Id.

Sall notified Preston that she would conduct an investigation. After interviewing the employees that Preston had identified as being at the bar that night, Sall informed Preston that none of the employees would confirm that Alvarado had made the statement in question, and that from the company's perspective the matter was concluded.[18]   Preston's wife was not present on the occasion in question, nor was she ever employed by R.S. Hughes.

**B.   The Events Leading up to Preston's Termination**

Preston was involved in additional incidents with coworkers after he sent his complaint to Sall.  On March 31, 2006, Preston confronted Alvarado in front of other employees concerning a table that Alvarado had left behind at the old warehouse after the Houston office moved to a new location.[19]  On April 1, 2006, Preston yelled at two sales representatives, Wally Papke and John Nelson, who were taking a break in the warehouse while Preston had continued to work.[20]  Alvarado notified Preston that he was filing a disciplinary report over the incident.[21]  On April 11, 2006, Preston was presented with a Performance Correction Notice concerning the March 31 and April 1 incidents that stated:  "The

---

[18]Plaintiff's Deposition, p. 248, lines 20-24.

[19]Id., p. 104, line 24 – p. 107, line 9.

[20]Id., p. 108, line 5 – p. 111, line 7.

[21]Id., p. 109, line 21 – p. 111, line 7.

perception you have given the Houston staff is that you can be intimidating, confrontational and unpredictable in your behavior."[22]

On June 12, 2006, Preston received an Employee Counseling Report, signed by Alvarado, notifying Preston of the need to double-check orders because of the high number of mis-shipments the company had experienced from the Houston facility in the preceding months.[23]

The final confrontation between Preston and Alvarado occurred in August of 2006.  Alvarado informed Preston that the previous day Navarro had handed Alvarado, in front of a customer, $12 that Navarro and Preston had earned from selling used pallets out of the warehouse.[24]   It is disputed whether Alvarado had previously authorized this practice.   Alvarado instructed Preston to stop selling pallets out of the warehouse.[25]   Preston then demanded the $12, and Alvarado refused to give it to him.[26]   Preston and Alvarado exchanged heated words in the sales office.[27]   Alvarado contacted

---

[22]Performance Correction Notice for Tony Preston, April 11, 2006, Exhibit 5 attached to Plaintiff's Deposition, Exhibit A attached to Defendant's Motion for Summary Judgment, Docket Entry No. 23.

[23]Employee Counseling Report for Tony Preston, June 12, 2006, Exhibit 6 attached to Plaintiff's Deposition, Exhibit A attached to Defendant's Motion for Summary Judgment, Docket Entry No. 23.

[24]Plaintiff's Deposition, p. 172, line 15 – p. 173, line 6.

[25]Id., p. 173, lines 7-15.

[26]Id., p. 173, line 16 – p. 175, line 12.

[27]Id., p. 175, line 23 – p. 176, line 13.

Sall and said that Preston had acted in an aggressive manner toward
him and had used threatening language.[28]   Sall instructed Alvarado
to suspend Preston and send him home.[29]   The Standards of Conduct
listed in the R.S. Hughes Employee Handbook specifically prohibit
employees from causing a disruption on company property or using
threatening or abusive language toward a supervisor.[30]

Sall conducted an investigation and interviewed the employees
who were present in the warehouse at the time of the incident.[31]
On August 14, 2006, in a telephone conference with Preston,
Alvarado, and John Nelson (a Sales Manager), Sall informed Preston
that he was being terminated because of his insubordination and
threatening behavior.[32]   The decision to terminate Preston was made
by Sall in conjunction with R.S. Hughes' President and Chief
Executive Officer.[33]   Preston understood the decision to be a joint
decision made by corporate officers.[34]

---

[28]Declaration of Janet Sall, June 29, 2009, Exhibit C
attached to Defendant's Motion for Summary Judgment, Docket Entry
No. 23, ¶ 5.  Alvarado reported to Sall that Preston had shouted,
"You better watch your fucking back."

[29]Plaintiff's Deposition, p. 176, line 14 - p. 177, line 1.

[30]R.S. Hughes Employee Handbook, Reprinted February 2004,
Exhibit 3 attached to Defendant's Motion for Summary Judgment,
Docket Entry No. 23, p. 20.

[31]Declaration of Janet Sall, ¶ 6.

[32]Plaintiff's Deposition, p. 204, line 24 - p. 206, line 7;
Declaration of Janet Sall, ¶ 9.

[33]Declaration of Janet Sall, ¶ 8.

[34]Plaintiff's Deposition, p. 214, lines 11-16; p. 267, lines
11-14.

Preston filed an employment discrimination complaint with the Texas Workforce Commission's Civil Rights Division on September 18, 2006.  The Equal Employment Opportunity Commission issued Preston a right to sue letter on July 25, 2007.  Preston filed his original complaint in this action on October 24, 2007.

## III.  <u>Analysis</u>

**A.   Applicable Law**

Title VII prohibits employers from taking adverse employment actions against employees on the basis of race, and also prohibits adverse actions taken in retaliation for having engaged in protected activity such as complaining about race discrimination. <u>See</u> <u>Foley v. University of Houston System</u>, 355 F.3d 333, 339 (5th Cir. 2003).  A private right of action exists under Title VII only for violations involving intentional discrimination.  <u>See</u> <u>Roberson v. Alltel Information Services</u>, 373 F.3d 647, 651 (5th Cir. 2004) ("The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff.").  Title VII does not protect plaintiffs from unfair decisions, but only from decisions based on unlawful discrimination.  <u>See</u> <u>Nieto v. L & H Packing Co.</u>, 108 F.3d 621, 624 (5th Cir. 1997).  The issue is not whether the defendant made erroneous decisions, but whether the defendant's decisions were made with discriminatory intent.  <u>See</u> <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1091 (5th Cir. 1995).  The plaintiff may rely on either direct or circumstantial evidence, or both, to prove his claims.  <u>See</u> <u>Machinchick v. PB Power, Inc.</u>, 398 F.3d 345,

350 (5th Cir. 2005); <u>Wallace v. Methodist Hosp. System</u>, 271 F.3d 212, 219 (5th Cir. 2001), <u>cert. denied</u>, 122 S.Ct. 1961 (2002).

      1.  <u>Direct Evidence</u>

      Direct evidence is "evidence which, if believed, proves the fact [in question] without inference or presumption." <u>Fabela v. Socorro Independent School District</u>, 329 F.3d 409, 415 (5th Cir. 2003). The plaintiff in this case has not presented any direct evidence establishing that R.S. Hughes terminated him out of a racial motivation or in retaliation for the complaint that he filed against Alvarado in January of 2006. In the absence of direct evidence, a plaintiff can overcome a defendant's motion for summary judgment with circumstantial evidence, using the burden-shifting analysis stated in <u>McDonnell Douglas Corp. v. Green</u>, 93 S.Ct. 1817 (1973).

      2.  <u>Circumstantial Evidence</u>

      The <u>McDonnell Douglas</u> burden-shifting analysis requires the plaintiff to present evidence establishing the existence of a <u>prima facie</u> case. <u>Id.</u> at 1824. Once the plaintiff establishes a <u>prima facie</u> case, a presumption of discrimination arises; and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the employment action at issue. <u>Id.</u> If the defendant meets this burden of production, the presumption of discrimination created by the plaintiff's <u>prima facie</u> case disappears, and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination.

A plaintiff may meet this burden by producing evidence tending to show that the reason offered by the defendant is not true but, instead, is a pretext for discrimination. <u>Id.</u> at 1825. In <u>Reeves v. Sanderson Plumbing, Inc.</u>, 120 S.Ct. 2097 (2000), the Supreme Court clarified the <u>McDonnell Douglas</u> analysis by explaining that a plaintiff need not produce evidence of both pretext and actual discriminatory intent to create a fact issue on a discrimination claim but that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." <u>Id.</u> at 2109.

**B.    Plaintiff's Race Discrimination Claim**

Preston argues that his termination was the product of racial discrimination. R.S. Hughes argues, assuming that Preston can establish a <u>prima facie</u> case of race discrimination, that it can establish a legitimate, non-discriminatory reason for terminating Preston. R.S. Hughes points to Preston's history of repeated conflicts with coworkers and his supervisor, and argues that the company's executives and Human Resources manager decided to terminate him because of his insubordination and continued violation of company policy.

### 1.    A Legitimate, Non-Discriminatory Reason

R.S. Hughes has presented substantial evidence to support its position. Preston's deposition, as well as the declarations of Alvarado and Sall, show that Preston was involved in numerous

conflicts with coworkers, and had frequent conflicts with his supervisor, Alvarado. Prior to his termination, Preston was issued a Performance Correction Notice that warned him against confrontational behavior.[35] Not long after receiving this Notice, Preston confronted Alvarado regarding proceeds from the sale of pallets in a manner than Alvarado characterized to Sall as threatening.[36] Sall investigated the incident and determined that Preston's behavior was insubordinate and in violation of company policy. After reviewing Preston's history of interpersonal conflict at the company, Sall and R.S. Hughes' executive officers decided to terminate Preston's employment.[37]

Given the undisputed record of conflicts between Preston and his coworkers and supervisor, R.S. Hughes has articulated a legitimate, non-discriminatory reason for Preston's termination. Therefore, under the <u>McDonnell Douglas</u> burden-shifting analysis the burden passes to Preston to show that R.S. Hughes' stated reasons for his termination are mere pretext for unlawful discrimination.

2.   <u>Pretext</u>

Preston has presented no evidence establishing that R.S. Hughes' stated reasons for his termination are mere pretext for

---

[35]Performance Correction Notice for Tony Preston, April 11, 2006, Exhibit 5 attached to Plaintiff's Deposition, Exhibit A attached to Defendant's Motion for Summary Judgment, Docket Entry No. 23.

[36]Declaration of Janet Sall, ¶ 5.

[37]Plaintiff's Deposition, p. 204, line 24 – p. 206, line 7; Declaration of Janet Sall, ¶ 9.

unlawful discrimination.  While Preston disputes the specific facts of the incidents cited by R.S. Hughes, he does not dispute that he has been party to a number of disputes in the workplace with his coworkers and with his supervisor.  Preston has presented no evidence that the incidents cited by R.S. Hughes as the reasons for his termination were not, in fact, the reasons why R.S. Hughes chose to terminate him.  Nor has he presented evidence that racial animus motivated the decision makers at R.S. Hughes to terminate him, or shown that the management of R.S. Hughes retained another worker with a comparable history of insubordination and conflict with coworkers.  In the absence of such evidence, Preston has failed to meet the burden of establishing that R.S. Hughes' stated reasons of insubordination and violations of company policy were mere pretext for unlawful discrimination.

3.   <u>Conclusions as to Race Discrimination</u>

For the reasons explained above, the court concludes that plaintiff has failed to raise a genuine issue of material fact for trial on his race discrimination claims.

**C.   Retaliation**

Preston alleges that he was terminated in retaliation for filing a complaint against Alvarado in January of 2006 regarding an inappropriate racial comment Alvarado made about Preston's wife.

R.S. Hughes argues that it is entitled to summary judgment on Preston's retaliation claim because Preston cannot produce evidence

-13-

capable of establishing a <u>prima facie</u> case of unlawful retaliation, and because Preston cannot produce evidence from which a reasonable fact-finder could conclude that its stated reason for his termination was a pretext for retaliation.

1.   <u>Prima Facie Case</u>

To establish a <u>prima facie</u> case of unlawful retaliation plaintiff must show (1) that he engaged in protected activity, (2) that he suffered a material adverse action, and (3) that a causal link exists between the protected activity and the adverse action.   <u>See</u> <u>Medina v. Ramsey Steel Co., Inc.</u>, 238 F.3d 674, 684 (5th Cir. 2001) (retaliation under Age Discrimination in Employment Act).   A "causal link" is established when the evidence demonstrates that the employer's adverse employment decision was based in part on knowledge of the employee's protected activity. In order to establish a causal link, the plaintiff must show that the defendant knew about the plaintiff's protected activity.   <u>See</u> <u>Manning v. Chevron Chemical Co.</u>, 332 F.3d 874, 883 (5th Cir. 2003), <u>cert. denied</u>, 124 S.Ct. 1060 (2004).

R.S. Hughes argues that it is entitled to summary judgment on Preston's retaliation claim because Preston did not engage in a protected activity and because the facts disprove causation between his termination and the event he claims is the subject of his retaliation, i.e., the complaint he issued against Alvarado.

Assuming for purposes of the pending motion that Preston's report of Alvarado's comment was protected activity under

-14-

Title VII, Preston has not presented evidence establishing a causal link between his report and his subsequent termination.  The record shows that Preston e-mailed a complaint to Sall on January 30, 2009, alleging that Alvarado had made an inappropriate racial remark concerning Preston's wife.  Sall then investigated the complaint and was unable to obtain independent confirmation of the remark from the other employees who might have heard it.  The company then dropped its investigation.  In the six months following Preston's complaint Alvarado filed reports with R.S. Hughes leading to Preston's receiving a Performance Correction Notice concerning disputes with Alvarado and with two coworkers,[38] and an Employee Counseling Report regarding a high number of mis-shipments coming from the warehouse where Preston was employed.[39] In August of 2006, after an argument between Alvarado and Preston concerning money that Preston believed he was owed for selling pallets out of the warehouse, Alvarado reported to Sall that Preston had confronted him in a threatening manner.[40]  Sall investigated the incident and then decided, with R.S. Hughes

---

[38]Performance Correction Notice for Tony Preston, April 11, 2006, Exhibit 5 attached to Plaintiff's Deposition, Exhibit A attached to Defendant's Motion for Summary Judgment, Docket Entry No. 23.

[39]Employee Counseling Report for Tony Preston, June 12, 2006, Exhibit 6 attached to Plaintiff's Deposition, Exhibit A attached to Defendant's Motion for Summary Judgment, Docket Entry No. 23.

[40]Declaration of Janet Sall, ¶ 5.

President and Chief Executive Officer, to terminate Preston's employment.

Preston has presented no evidence that Sall and the R.S. Hughes executives who decided to terminate him did so in retaliation for his complaint against Alvarado; Preston has acknowledged that the decision was made by these parties, and not by Alvarado.[41]  While Sall clearly knew about Preston's complaint, since she had received Preston's January 30, 2006, e-mail about Alvarado's comment in her role as Human Resources Manager, there is no indication in the record that it was this complaint that motivated the decision to terminate Alvarado.  To the contrary, Sall made it clear that the decision to terminate Alvarado was based on his record of disputes with coworkers, in particular his confrontation with Alvarado in August of 2006 after he had been cautioned to avoid confrontational behavior.[42]

Nor does the temporal proximity of seven months between his complaint and the termination establish a causal link.  To establish a <u>prima facie</u> case for retaliation solely on the basis of temporal proximity, the employer's knowledge of the protected activity and the adverse employment action must be "very close" in time.  <u>Clark Co. Sch. Dist. v. Breeden</u>, 121 S.Ct. 1508, 1511 (2001)

---

[41]Plaintiff's Deposition, p. 214, lines 11-16; p. 267, lines 11-14.

[42]Declaration of Janet Sall, ¶ 8.

-16-

(citing cases in which 3- and 4-month gaps were held to be too long to establish a causal link on the basis of temporal proximity alone).  In the absence of some evidence that Preston's complaint caused the R.S. Hughes decision makers to reach the decision they did, Preston cannot establish the causal link necessary to make a prima facie case of retaliation.

Nor can Preston show an indirect causal link by arguing that Alvarado, in retaliation for Preston's complaint, issued inaccurate and misleading reports to R.S. Hughes management that ultimately caused the decision makers to terminate Preston.  To impute Alvarado's retaliatory intent to the formal decision makers, Preston must submit evidence sufficient to establish two conditions: (1) that Alvarado exhibited discriminatory animus and (2) that Alvarado "possessed leverage, or exerted influence, over the titular decisionmaker."  See Roberson, 373 F.3d at 653. Preston has not presented admissible evidence that Alvarado exhibited discriminatory animus toward him because of his race, nor has he presented evidence that Alvarado possessed leverage over Sall and the R.S. Hughes executives that decided to terminate Preston.  The evidence shows that after Alvarado reported Preston's insubordinate behavior to Sall, Sall conducted an investigation of the incident and interviewed other employees in the office.  The fact that Sall chose to adopt Alvarado's version of the incident over Preston's does not in itself indicate that Alvarado possessed undue leverage over Sall.  The record in this case is insufficient

-17-

to impute Alvarado's retaliatory intent, if it existed, to the decision makers who decided to terminate Preston.

    2.  <u>Pretext</u>

Even assuming in the alternative that Preston had presented sufficient evidence to support a <u>prima facie</u> case of retaliation, the result in this case would remain the same.  As with Title VII race discrimination claims, once a plaintiff establishes a <u>prima facie</u> case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action.  <u>Medina</u>, 238 F.3d at 684.  Once the defendant has articulated such a reason, the plaintiff must adduce evidence "that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation."  <u>Id.</u>  This burden requires the plaintiff to demonstrate that the adverse employment action would not have occurred "but for" the protected activity.  <u>Id.</u>  <u>See</u> <u>Septimus v. University of Houston</u>, 399 F.3d 601, 608 (5th Cir. 2005) ("This court has consistently required a 'but for' standard for proving causation on a Title VII retaliation claim brought under the pretext framework.").

As discussed above in the analysis of Preston's racial discrimination claim, R.S. Hughes has articulated a legitimate, non-retaliatory reason for Preston's termination.  R.S. Hughes has introduced evidence that Preston was involved in repeated conflicts with coworkers and with his supervisor, and that his termination

-18-

was due to this history of conflict and insubordination. Since R.S. Hughes has produced evidence that, if true, would permit the conclusion that Preston's termination was non-discriminatory, the court must decide whether Preston has shown that his complaint against Alvarado, assuming it was protected by Title VII, was a "but for" cause of his termination. He has not done so. R.S. Hughes has produced evidence showing that Preston had a record of conflict with coworkers and his supervisor, and that this history of conflict was the cause of his termination. Preston has introduced no evidence that retaliation for his complaint was the true cause. In the absence of such evidence of retaliatory intent, a reasonable fact-finder could not find that the reasons proffered by R.S. Hughes for Preston's termination were mere pretext for retaliation.

      3.   <u>Conclusions as to Unlawful Retaliation</u>

      For the reasons explained above, the court concludes that the plaintiff has failed to raise a genuine issue of material fact for trial on his retaliation claim. Since Preston has introduced no evidence supporting a causal link between his complaint against Alvarado and his termination, he has failed to make a <u>prima facie</u> case for unlawful retaliation. In the alternative, if Preston's evidence were sufficient to make a <u>prima facie</u> case of unlawful retaliation, R.S. Hughes would still be entitled to summary judgment because it has articulated legitimate, non-discriminatory

-19-

reasons for Preston's termination; and Preston has presented no evidence that the reasons stated by R.S. Hughes were mere pretext for unlawful retaliation.

**D.    Defendant's Motion to Strike Summary Judgment Evidence**

The defendant in its Reply to Plaintiff's Request for Denial of Summary Judgment (Docket Entry No. 27) has moved to strike evidence introduced by the plaintiff in his Request for Denial of Summary Judgment (Docket Entry No. 26).  Preston's Request for Denial of Summary Judgment includes transcriptions of conversations that Preston claims to have taped with Trent Dews, Angelo Navarro, and Kirk Hein, employees of R.S. Hughes who were at the Houston facility during one of the incidents cited by R.S. Hughes as evidence of Preston's history of conflict with coworkers.[43]  The court will deny defendant's motion to strike, but concludes that the evidence in question is inadmissable hearsay because it is an out-of-court statement offered to prove the truth of the matter asserted, Fed. R. Evid. 801(c), and does not fall under any exception to the hearsay rule.  Fed. R. Evid. 803. Since the evidence is inadmissible hearsay, it is not competent summary judgment evidence.  <u>Goodwin v. Johnson</u>, 132 F.3d 162, 186 (5th Cir. 1997).

---

[43]Plaintiff's Request for Denial of Summary Judgment, Docket Entry No. 26, Exhibit A.

### IV.  <u>Conclusions and Order</u>

For the reasons explained above, the court concludes that R.S. Hughes is entitled to summary judgment on the claims for race discrimination and retaliation that plaintiff has asserted under Title VII of the Civil Rights Act of 1964.  Accordingly, Defendant's Motion for Summary Judgment (Docket Entry No. 23) is **GRANTED.**  Defendant's Motion to Strike Summary Judgment Evidence (Docket Entry No. 27) is **DENIED**, but the court concludes that the evidence in question is inadmissible hearsay.

**SIGNED** at Houston, Texas, on this 10th day of September, 2009.

_____

SIM LAKE

UNITED STATES DISTRICT JUDGE